UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
DAYTON DIVISION

| | |
|---|---|
| **JOHN W. MITCHELL**, <br> 361 N. Isabella St. <br> Springfield, OH 45504 <br><br> Plaintiff, <br><br> v. <br><br> **WESBANCO BANK, INC.**, <br> c/o Michael L. Perkins <br> 135 W. Main St <br> St. Clairsville, OH 43950 <br><br> Defendant. | Case No. <br><br> Judge <br><br> **COMPLAINT FOR DAMAGES** <br><br> **JURY DEMAND ENDORSED HEREON** |

Plaintiff John W. Mitchell, through counsel, for his Complaint for Damages against Defendant WesBanco Bank, Inc., states as follows:

**PARTIES, JURISDICTION, AND VENUE**

1. Plaintiff John W. Mitchell ("Mitchell" or "Plaintiff") is the owner of residential real property, located at and commonly known as 361 N. Isabella St., Springfield, OH 45504 (the "Home").

2. Mitchell currently maintains the Home as his primary, principal residence, and has so maintained the Home for all times relevant to the allegations of the Complaint.

3. Defendant WesBanco Bank, Inc. ("WesBanco" or "Defendant") is a foreign corporation incorporated under the laws of the State of West Virginia that maintains its headquarters and principal place of business at 1 Bank Plaza, Wheeling, WV 26003.

4. WesBanco is the servicer of a note executed by Mitchell (the "Note") and of a mortgage on the Home that secures the Note (the "Mortgage") (collectively, the "Loan").

5. This Court has jurisdiction pursuant to 28 U.S.C. § 1331 as this action arises under

the Dodd-Frank Wall Street Reform and Consumer Protection Act (DFA), Real Estate Settlement Procedures Act, 12 U.S.C. §§ 2601, *et seq.* (RESPA), and Truth in Lending Act, 15 U.S.C. §§ 1601, *et seq.* (TILA).

6. This Court has supplemental jurisdiction to hear any state law claims that are plead herein or that may subsequently arise pursuant to 28 U.S.C. § 1367.

7. Venue lies in this District pursuant to 28 U.S.C. § 1391(b) as a substantial part of the events or omissions giving rise to the claims asserted herein occurred in this District.

## SUMMARY OF CLAIMS

8. This action is filed to enforce statutory provisions of RESPA and TILA, as well as regulations promulgated by the Consumer Financial Protection Bureau (CFPB) and that became effective on January 10, 2014, specifically, 12 C.F.R. § 1024.1, *et seq.* ("Regulation X") and 12 C.F.R. § 1026.1, *et seq.* ("Regulation Z").

9. In January 2013, the CFPB issued a number of final rules concerning mortgage markets in the United States, pursuant to the DFA, Public Law No. 111-203, 124 Stat. 1376 (2010).

10. Specifically, on January 17, 2013, the CFPB issued the Real Estate Settlement Procedures Act Mortgage Servicing Final Rules, 78 Fed. Reg. 10695 (Regulation X) and Mortgage Servicing Rules Under the Truth in Lending Act, 78 Fed. Reg. 10901 (February 14, 2013) (Regulation Z), which became effective on January 10, 2014.

11. Mitchell asserts claims for relief against WesBanco for violations of the specific rules under RESPA, Regulation X, TILA, and Regulation Z, as set forth, *infra*.

12. WesBanco is a mortgage servicer as defined by RESPA and Regulation X. 12 U.S.C. § 2605(i)(2); 12 C.F.R. § 1024.2(b).

13. The Loan is a "federally related mortgage loan" as defined by RESPA and

Regulation X. 12 U.S.C. § 2602(1); 12 C.F.R. § 1024.2(b).

14. WesBanco is subject to the requirements of RESPA and Regulation X, and does not qualify for the exception for "small servicers"—as defined by 12 C.F.R. § 1026.41(e)(4)—nor for the exemption for a "qualified lender"—as defined by 12 C.F.R. § 617.7000.

15. Mortgage servicers are prohibited from failing "to take timely action to respond to a borrower's requests to correct errors relating to allocation of payments, final balances for purposes of paying off the loan, or avoiding foreclosure, or other standard servicer's duties." 12 U.S.C. § 2605(k)(1)(C).

16. Mortgage servicers are prohibited from failing "to comply with any other obligation found by the [CFPB], by regulation, to be appropriate to carry out the consumer protection purposes of [RESPA]." 12 U.S.C. § 2605(k)(1)(E).

17. Mitchell has a private right action under RESPA and Regulation X pursuant to 12 U.S.C. § 2605(f) for the claimed violations and such action provides for remedies including actual damages, statutory damages, and attorneys' fees and costs.

18. WesBanco is a creditor as defined by TILA as WesBanco regularly extends consumer credit which is payable by agreement in more than four installments and is the person to whom the Loan is initially payable. 15 U.S.C. § 1602(g).

19. TILA provides that a creditor or servicer of a home loan shall provide an accurate payoff balance within a reasonable period, but within seven (7) business days regardless of circumstances, upon receipt of a written request from a borrower for the same. 15 U.S.C. § 1639g.

20. Through Regulation Z, the CFPB has provided guidance for the interpretation of certain TILA provisions, including servicers' duties related to responding to requests for a payoff balance.

21. Regarding payoff statements, Regulation Z provides that:

> In connection with a consumer credit transaction secured by a consumer's dwelling, a creditor, assignee or servicer, as applicable, must provide an accurate statement of the total outstanding balance that would be required to pay the consumer's obligation in full as of a specified date. The statement shall be sent within a reasonable time, but in no case more than seven business days, after receiving a written request from the consumer or any person acting on behalf of the consumer. When a creditor, assignee, or servicer, as applicable, is not able to provide the statement within seven business days of such a request because a loan is in bankruptcy or foreclosure, because the loan is a reverse mortgage or shared appreciation mortgage, or because of natural disasters or other similar circumstances, the payoff statement must be provided within a reasonable time.

12 C.F.R. § 1026.36(c)(3).

22. The Loan is a closed-end consumer credit transaction secured by the Home, a home loan, and a consumer credit transaction secured by the Home, as contemplated by TILA and Regulation Z. 15 U.S.C. § 1639g; 12 C.F.R. § 1026.36(b).

23. Mitchell has a private right action under TILA and Regulation Z pursuant to 15 U.S.C. § 1640(a) for the claimed violations and such action provides for remedies including actual damages, statutory damages, and attorneys' fees and costs.

## FACTUAL BACKGROUND

24. On August 25, 2009, Mitchell obtained the Loan from WesBanco.

25. In late 2021 and early 2022, Mitchell sought to refinance the Loan with U.S. Bank and reached out to WesBanco to obtain a payoff statement for the Loan.

26. On March 23, 2022, pursuant to U.S. Bank's request, WesBanco sent U.S. Bank a payoff statement ("Payoff #1"). A copy of Payoff #1 is attached as **Exhibit 1**.

27. In Payoff #1, WesBanco provided the following information:

| Current principal | $10,182.41 | |
|---|---|---|
| Interest | 12,364.70 | Daily accrual of 1.7784346 |
| Late charges | 0.00 | |
| Fee: 01 – LR | 34.00 | Lien Release Fee |
| Escrow balance | -1,295.91 | |
| Total payoff | $21,285.20 | |

*See* Exhibit 1.

28. After receipt of Payoff #1, Mitchell and U.S. Bank worked together to finalize the refinance.

29. On April 18, 2022, pursuant a request from U.S. Bank for an updated payoff statement, WesBanco sent U.S. Bank a payoff statement ("Payoff #2"). A copy of Payoff #2 is attached as **Exhibit 2**.

30. In Payoff #2, WesBanco provided the following information, without any explanation regarding the significant differences when compared to Payoff #1:

| Current principal | $44,096.67 | |
|---|---|---|
| Interest | $36,996.85 | Daily accrual of $7.7107418 |
| Lien Release Fee | $34.00 | |
| Escrow Balance | -$826.87 | |
| Total Payoff | $80,300.65 | |

*See* Exhibit 2.

31. On April 27, 2022, pursuant a request from U.S. Bank for an updated payoff statement, WesBanco sent U.S. Bank a payoff statement ("Payoff #3"). A copy of Payoff #3 is attached as **Exhibit 3**.

32. In Payoff #3, WesBanco provided the following information, again, without any explanation:

| Principal | $44,096.67 |
|---|---|
| Interest | $37,066.25 |
| Lien Release Fee | $34.00 |
| Escrow Balance | -$826.87 |
| Total Payoff | $80,370.05 |

*See* Exhibit 3.

33. As a result of these conflicting payoff statements, Mitchell could not move forward with the refinance.

34. In June 2022, Mitchell engaged counsel for representation to investigate the large discrepancy between Payoff #1 and the subsequent payoff statements.

35. On June 16, 2022, Mitchell, through counsel, sent the following pieces of correspondence, all classified as requests for information pursuant to 12 C.F.R. § 1024.36, to WesBanco at the address designated by WesBanco for receipt of requests for information and notices of error pursuant to 12 C.F.R. §§ 1024.36(b) and 1024.35(c) (the "Designated Address"):

   a. Correspondence captioned "Request for Information Pursuant to 12 C.F.R. § 1024.36 including a request for a payoff statement pursuant to 12 C.F.R. § 1026.36(c)(3)" seeking information concerning the Loan, specifically an itemized payoff statement and the name, address, and contact information for the current owner or assignee, master servicer, and current servicer of the Loan ("RFI #1"); and

   b. Correspondence captioned "Request for Information Pursuant to 12 C.F.R. § 1024.36" seeking additional information concerning the Loan, including a transaction history of the Loan, escrow analyses, and information related to loss mitigation, among other items ("RFI #2").

Copies of RFI #1 and RFI #2 (collectively, the "RFIs") and tracking information evidencing delivery of the RFIs are attached as **Exhibit 4** and **Exhibit 5**, respectively.

36. On June 16, 2022, Mitchell, through counsel, sent a notice of error (the "NOE") to WesBanco at the Designated Address. A copy of the NOE and tracking information evidencing delivery of the NOE is attached as **Exhibit 6**.

37. Through the NOE, Mitchell asserted that WesBanco failed to provide Mitchell with accurate payoff statements and WesBanco imposed fees and/or charges to the Loan without a reasonable basis. *See* Exhibit 6.

38. WesBanco received the NOE at the Designated Address on June 23, 2022. *See* Exhibit 6.

39. WesBanco sent Mitchell a fourth payoff statement dated June 23, 2022 ("Payoff #4"). A copy of Payoff #4 is attached as **Exhibit 7**.

40. In Payoff #4, WesBanco provided the following information:

| Current principal | $44,094.07 | |
|---|---|---|
| Interest | $36,340.00 | Daily accrual of 7.71 |
| Late charges | $- | |
| Fee: 01 – LR | $34.00 | Lien Release Fee |
| Escrow balance | $(710.10) | |
| Total payoff | $79,757.97 | |

*See* Exhibit 7.

41. WesBanco sent Mitchell a fifth payoff statement dated July 1, 2022 ("Payoff #5"). A copy of Payoff #5 is attached as **Exhibit 8**.

42. In Payoff #5, WesBanco provided the following information:

| Current principal | $44,094.07 | |
|---|---|---|
| Interest | $36,309.09 | Daily accrual of 7.71 |

| Late charges | $- | |
|---|---|---|
| Fee: 01 – LR | $34.00 | Lien Release Fee |
| Escrow balance | $(710.10) | |
| Total payoff | $79,727.06 | |

*See* Exhibit 8.

43. On or about July 5, 2022, WesBanco sent Mitchell a response to the NOE (the "NOE Response"). A copy of the cover pages of the Response is attached as **Exhibit 9**.

44. In the NOE Response, WesBanco states that, in 2011, it charged off a portion of the Loan that it deemed uncollectable, $34,015.56, resulting in the maintenance of two balances on the Loan. *See* Exhibit 9.

45. WesBanco claimed that Payoff #1 "was not complete" because it "did not include the charged-down amount" and that Payoff #2 and Payoff #2 contained correct information. *See* Exhibit 9.

46. WesBanco also claimed that, as of July 1, 2022, the payoff amount of the Loan included an accrued interest balance of $36,309.09, instead of the $12,364.70 figure originally quoted to Mitchell through Payoff #1. *See* Exhibit 9.

47. However, as a result of deciding to charge off a portion of the Loan's balance, WesBanco was prohibited from charging additional interest on the charged off portion of the Loan and was not permitted to retroactively assess the interest charges after receipt of U.S. Bank's request for a payoff statement.

48. WesBanco offered to waive the accrued interest on the charged down amount on the condition that Mitchell agree to settle the Loan for $54,033.38. *See* Exhibit 9.

49. However, if WesBanco had performed a reasonable investigation into the errors asserted by the NOE, it would have discovered that it was not permitted to collect the interest

charges on the charged off amount and WesBanco would have waived the interest charges without requiring the payoff of the Loan.

## IMPACT AND DAMAGES

50. WesBanco's attempts to collect the additional interest charges directly resulted in Mitchell losing out on the opportunity to refinance the Loan at a lower interest rate. Offering to waive the additional interest charges, without actually taking this action, does not correct WesBanco's errors or compensate Mitchell for his damages.

51. WesBanco's improper actions caused Mitchell to suffer from actual and proximate damages including, but not limited to:

   a. Improper fees and charges imposed on the Loan, the attempted collection of such fees, including approximately $24,000.00 in improper interest for which Mitchell is personally obligated or which otherwise negatively impacts any equity in the Home to which he is entitled, and refusal to cease collection attempts of the improper fees and charges;

   b. As a result of the inaccuracies of Payoff #2 and Payoff #3, Mitchell lost out on the opportunity to refinance the Loan at a 4.875% interest rate;

   c. Mitchell was quoted a refinance with a 6.625% interest rate, resulting in a lifetime loan cost difference of $21,999.60, over thirty years, and a monthly payment of $61.11.

   d. WesBanco's improper actions also caused Mitchell to incur legal fees, costs, and expenses to submit RFI #1, RFI #2, and the NOE, in a good faith attempt to obtain information to ascertain the nature of the problems at hand and to otherwise amicably resolve this matter, or to have WesBanco mitigate the harm

caused to Mitchell; and,

e. WesBanco's improper actions also caused Mitchell to suffer severe emotional distress related to WesBanco's wrongful attempts to collect improper amounts of interest and fees and his inability to secure a refinance at an acceptable rate, which has resulted in frustration, loss of sleep, anxiety, depression, embarrassment, and other significant emotional distress.

## PATTERN AND PRACTICE OF WESBANCO'S VIOLATIONS OF RESPA AND REGULATION X

52. WesBanco's actions are part of a pattern and practice of behavior in violation of Mitchell's rights and in abdication and contravention of WesBanco's obligations under the mortgage servicing regulations set forth in Regulation X of RESPA.

53. WesBanco has numerous consumer complaints lodged against it nationally on the CFPB's consumer complaint database. Each such complaint is filed and cataloged in the CFPB's publicly accessible online database which can be accessed at the following link: http://www.consumerfinance.gov/data-research/consumer-complaints.

## COUNT ONE
## VIOLATIONS OF TILA, 15 U.S.C. § 1639g AND 12 C.F.R. § 1026.36(c)

54. Mitchell restates and incorporates all of the allegations contained in paragraphs 1 through 53 in their entirety, as if fully rewritten herein.

55. TILA provides that a creditor or servicer of a home loan shall provide an accurate payoff balance within a reasonable period, but within seven (7) days regardless of circumstances, upon receipt of a written request from a borrower for the same. 15 U.S.C. § 1639g; 12 C.F.R. § 1026.36(c)(3).

56. Mitchell sought an accurate payoff statement of the Loan pursuant to 15 U.S.C. §

1639g and 12 C.F.R. § 1026.36(c)(3) in order to refinance the Loan.

57. In response to Mitchell's requests for an accurate payoff statement, WesBanco failed to provide Mitchell with an accurate payoff statement as required by 15 U.S.C. § 1639g and 12 C.F.R. § 1026.36(c)(3), as WesBanco provided Mitchell with the inaccurate Payoff #2, Payoff #3, Payoff #4, and Payoff #5. *See* Exhibits 2, 3, 7, and 8.

58. Mitchell was harmed as a result of WesBanco's actions, as discussed, *supra*, at ¶ 50-51.

59. As a result of its actions, WesBanco is liable to Mitchell for actual damages, statutory damages, and attorneys' fees and costs. 15 U.S.C. § 1640(a)(1)-(3).

## COUNT TWO
## VIOLATIONS OF TILA, 12 C.F.R. § 1026.41(e)

60. Mitchell restates and incorporates all of the allegations contained in paragraphs 1 through 53 in their entirety, as if fully rewritten herein.

61. A servicer of a closed-end consumer credit transaction secured by a dwelling must provide the consumer, for each billing cycle, a periodic statement meeting the requirements of 12 C.F.R. § 1026.41. 12 C.F.R. § 1026.41(a).

62. A servicer includes the creditor, assignee, or servicer, as applicable. 12 C.F.R. § 1026.41(a)(2).

63. 12 C.F.R. § 1026.41(e)(6) governs the cessation and resumption of the transmission of period billing statements concerning "charged off" loans and states as follows:

> (i) A servicer is exempt from the requirements of this section for a mortgage loan if the servicer:
>
> (A) Has charged off the loan in accordance with loan-loss provisions and will not charge any additional fees or interest on the account; and

   (B) Provides, within 30 days of charge-off or the most recent periodic statement, a periodic statement, clearly and conspicuously labeled "Suspension of Statements & Notice of Charge Off - Retain This Copy for Your Records." The periodic statement must clearly and conspicuously explain that, as applicable, the mortgage loan has been charged off and the servicer will not charge any additional fees or interest on the account; the servicer will no longer provide the consumer a periodic statement for each billing cycle; the lien on the property remains in place and the consumer remains liable for the mortgage loan obligation and any obligations arising from or related to the property, which may include property taxes; the consumer may be required to pay the balance on the account in the future, for example, upon sale of the property; the balance on the account is not being canceled or forgiven; and the loan may be purchased, assigned, or transferred.

  (ii) Resuming compliance.

   (A) If a servicer fails at any time to treat a mortgage loan that is exempt under paragraph (e)(6)(i) of this section as charged off or charges any additional fees or interest on the account, the obligation to provide a periodic statement pursuant to this section resumes.

   (B) *Prohibition on retroactive fees.* A servicer may not retroactively assess fees or interest on the account for the period of time during which the exemption in paragraph (e)(6)(i) of this section applied.

64. WesBanco, as a creditor acting as the servicer of the Loan, was required to send periodic statements to Mitchell.

65. However, in 2011, WesBanco charged off a portion of the Loan it deemed uncollectable. *See* <u>Exhibit 9</u>.

66. Mitchell has not received periodic statements from WesBanco in many years, and on information and belief, WesBanco stopped sending periodic statements after it charged off a portion of the Loan.

67. As a result of the charge off, WesBanco was prohibited from charging additional fees or interest on the charged off portion of the Loan. 12 C.F.R. § 1026.41(e)(6)(i)(A).

68. WesBanco is prohibited from retroactively assessing fees and interest charges on mortgage loans for periods during which Mitchell was not being sent periodic statements. 12 C.F.R. § 1026.41(e)(6)(ii)(B).

69. WesBanco's actions, in charging fees and interest on the charged off portion of the Loan as a result of receiving Mitchell's requests for payoff statements constitute violations of 12 C.F.R. § 1026.41(e)(6).

70. Mitchell was harmed as a result of WesBanco's actions, as discussed, *supra*, at ¶¶ 50-51.

71. As a result of its actions, WesBanco is liable to Mitchell for actual damages, statutory damages, and attorneys' fees and costs. 15 U.S.C. § 1640(a)(1)-(3).

**COUNT THREE**
**VIOLATIONS OF RESPA, 12 U.S.C. § 2605 AND 12 C.F.R. § 1024.35**

72. Mitchell restates and incorporates all of the allegations contained in paragraphs 1 through 53 in their entirety, as if fully rewritten herein.

73. "A servicer shall comply with the requirements of this section for any written notice from the borrower that asserts an error and that includes the name of the borrower, information that enables the servicer to identify the borrower's mortgage loan account, and the error the borrower believes has occurred." 12 C.F.R. § 1024.35(a).

74. Comment 1 of the CFPB's Official Interpretations of 12 C.F.R. § 1024.35(a) provides that "[a] notice of error is submitted by a borrower if the notice of error is submitted by an agent of the borrower." Supplement I to Part 1024.

75. A servicer must respond to a notice of error by either:

  (A) Correcting the error or errors identified by the borrower and providing the borrower with a written notification of the correction, the effective date of the correction, and contact information, including a telephone number, for further assistance; or

  (B) Conducting a reasonable investigation and providing the borrower with a written notification that includes a statement that the servicer has determined that no error occurred, a statement of the reason or reasons for this determination, a statement of the borrower's right to request documents relied upon by the servicer in reaching its determination, information regarding how the borrower can request such documents, and contact information, including a telephone number, for further assistance.

12 C.F.R. § 1024.35(e)(1)(i).

76. A servicer must respond to a notice of error in compliance with 12 C.F.R. § 1024.35(e)(1):

  (A) Not later than seven days (excluding legal public holidays, Saturdays, and Sundays) after the servicer receives the notice of error for errors asserted under paragraph (b)(6) of this section.

  (B) Prior to the date of a foreclosure sale or within 30 days (excluding legal public holidays, Saturdays, and Sundays) after the servicer receives the notice of error, whichever is earlier, for errors asserted under paragraphs (b)(9) and (10) of this section.

  (C) For all other asserted errors, not later than 30 days (excluding legal public holidays, Saturdays, and Sundays) after the servicer receives the applicable notice of error.

12 C.F.R. § 1024.35(e)(3)(i).

77. "A servicer of a federally related mortgage shall not...fail to take timely action to respond to a borrower's requests to correct errors relating to allocation of payments, final balances for purposes of paying off the loan, or avoiding foreclosure, or other standard servicer's duties." 12 U.S.C. § 2605(k)(1)(C).

78. A servicer of a federally related mortgage shall not "fail to comply with any other obligation found by the Bureau of Consumer Financial Protection, by regulation, to be appropriate to carry out the consumer protection purposes of this chapter." 12 U.S.C. § 2605(k)(1)(E).

79. The NOE constitutes a notice of error as defined by 12 C.F.R. § 1024.35(a) as it is a written notice from Mitchell that includes his name, mortgage loan account number, and property address and asserts an error that he believed to have occurred. *See* Exhibit 6.

80. On June 16, 2022, Mitchell, through counsel, sent the NOE to WesBanco at the Designated Address. *See* Exhibit 6.

81. Through the NOE, Mitchell asserted that WesBanco failed to provide Mitchell with accurate payoff statements and WesBanco imposed fees and/or charges to the Loan without a reasonable basis. *See* Exhibit 6.

82. WesBanco received the NOE at the Designated Address on June 23, 2022. *See* Exhibit 6.

83. On or about July 5, 2022, WesBanco sent Mitchell the NOE Response. *See* Exhibit 9.

84. In the NOE Response, WesBanco states that, in 2011, it charged off a portion of the Loan that it deemed uncollectable, $34,015.56, resulting in the maintenance of two balances on the Loan. *See* Exhibit 9.

85. WesBanco also claimed that, as of July 1, 2022, the payoff amount of the Loan included an accrued interest balance of $36,309.09, instead of the $12,364.70 figure originally quoted to Mitchell through Payoff #1. *See* Exhibit 9.

86. As discussed in Count Two, as a result of deciding to charge off a portion of the Loan's balance, WesBanco was prohibited from charging additional interest on the charged off

portion of the Loan and was not permitted to retroactively assess the interest charges after receipt of U.S. Bank's request for a payoff statement.

87. WesBanco failed to fulfill its obligations as to 12 C.F.R. § 1024.35(e)(1)(i)(A) as WesBanco did not admit that any errors occurred as alleged in the NOE.

88. WesBanco did not fulfill its obligations as to 12 C.F.R. § 1024.35(e)(1)(i)(B), as it is clear that WesBanco did not perform a reasonable investigation into the errors alleged through the NOE because WesBanco would have discovered that it was not permitted to collect the interest charges on the charged off amount and WesBanco would have waived the interest charges without requiring the payoff of the Loan.

89. WesBanco's failure to timely and properly respond to the NOE by failing to correct its errors or to otherwise perform a reasonable investigation into and otherwise properly respond to the errors alleged through the NOE constitutes a violation of 12 C.F.R. § 1024.35(e) and 12 U.S.C. § 2605(k) and caused Mitchell to suffer actual damages, as discussed, *supra*, at ¶¶ 50-51. *See Renfroe v. Nationstar Mortg.*, LLC, 822 F.3d 1241, 1246 (11th Cir. 2016) ("This statutory mechanism makes past errors current by requiring servicers to fix errors they find upon reasonable investigation, including by issuing refunds as necessary.").

90. Further, WesBanco's failure to comply with 12 C.F.R. § 1024.35(e) and 12 U.S.C. § 2605(k) caused Mitchell's attorneys' fees and costs associated with the preparation of the NOE to metamorphose into damages. *See Marais v. Chase Home Fin., LLC* (Marais II), 24 F. Supp. 3d 712, 726-728 (S.D. Ohio 2014); *Marais v. Chase Home Fin. LLC* (Marais I), 736 F.3d 711, 721 (6th Cir. 2013).

91. WesBanco's actions are part of a pattern and practice of behavior in conscious disregard for Mitchell's rights and in abdication of WesBanco's obligations under RESPA and

Regulation X.

92. As a result of WesBanco's actions, WesBanco is liable to Mitchell for actual damages and statutory damages, as further described, *supra*. 12 U.S.C. § 2605(f)(1).

93. Additionally, Mitchell requests reasonable attorneys' fees and costs incurred in filing and maintaining this action. 12 U.S.C. § 2605(f)(3).

## PRAYER FOR RELIEF

**WHEREFORE** Plaintiff John W. Mitchell respectfully requests that this Court enter an Order granting judgment against Defendant WesBanco Bank, Inc. as follows:

A. Actual damages in an amount to be determined at trial as to Counts One through Three;

B. Statutory damages of Four Thousand Dollars ($4,000.00) for the violations of TILA as contained in Counts One and Two;

C. Statutory damages of Two Thousand Dollars ($2,000.00) for the violation of RESPA as contained in Count Three;

D. Costs and reasonable attorneys' fees as to all Counts; and,

E. Such other relief which this Court may deem appropriate.

## JURY DEMAND

Plaintiff John W. Mitchell hereby respectfully demands a trial by jury on all such claims that may be so tried.

Respectfully submitted,

/s/ *Marc E. Dann*
Marc E. Dann (0039425)
Daniel M. Solar (0085632)
Michael A. Smith, Jr. (0097147)
**Dann Law**
15000 Madison Ave.
Lakewood, OH 44107
Telephone: (216) 373-0539
Facsimile: (216) 373-0536
notices@dannlaw.com
*Counsel for Plaintiff John W. Mitchell*